The next matter, number 24-9001, Julio A. Simoes et al. v. Nicholas Anthony Sivieri III. At this time, would counsel for the appellants please introduce himself on the record to begin. Good morning, your honors. My name is Peter Cole. I represent the plaintiff-slash-appellants. I must say, you guys sure do hear some interesting cases. I've been sitting here all morning. I have ten minutes. I will stand on the appellant's reply brief as to any rebuttal to the defendant. So I'll just take the ten minutes for what the plaintiffs have to say. Okay. The issue here is whether Nick Sivieri had the willful intent to injure the plaintiffs. As you all know, this is about non-payment of overtime. And as we all know, the willfulness element requires either a subjective intent to injure or substantial certainty. As indicated in the appellant's brief, this is not a settled matter. There are differences among the circuits. For example, the Fifth Circuit, and I believe the Ninth one too, regarding this substantial certainty, have taken the position that it's either subjective intent to injure or, objectively speaking, substantial certainty. The Sixth Circuit, by contrast, has taken the position that it's either subjective intent to injure or, subjectively, were you substantially certain. And again, indicated in the brief, here within the First Circuit, lower courts have come down differently on this. Judge Feeney, who always wrote very detailed and thoughtful opinions in the Swayze case, outlined a lot of different decisions that have happened. In the case, which I'm sure that Attorney Goldberg will cite, Faria v. Silva, the judge Hillman there, which I'll suggest it was Dicta, but he wrote that the court had to take the defendant's subjective beliefs into account, even if they were wholly unreasonable. Meanwhile, a case which I'll suggest is very much on point here, In re Shove, looked for was there objective substantial certainty. I think there's no dispute that you can't have a purely objective test, because then you're just testing for recklessness, not for anything the defendant actually intended. On the other hand, to do what Judge Panos, the trial judge, did, looking only at the defendant's subjective beliefs, and also the bankruptcy appellate panel was very much of that view, that only his subjective beliefs mattered. Number one, that effectively nullifies Section 523A6. You could never willfully injure someone if all you had to do was say, well, subjectively, I believed I could do that. Well, we have an idea in the law called willful blindness, right, which is willful blindness, because you can't say I didn't know when you take affirmative actions to avoid confirming a high probability of wrongdoing. So we say if the red flags, basically, are so clear that you seem to be intentionally looking away, then that's knowledge or willfulness or whatever term you want to use, and that's willful blindness. But recklessness is merely knowing of a substantial and unjustified risk of wrongdoing. And so tell me which facts move it over from he's acting with a substantial, knowing that there's a risk that he's going to owe these people, versus he put his head in the sand in the face of facts that he knew made them employees. What are the best facts for you? You know, I'm not quite tamed to this. He put his head in the sand. What I'll suggest were the facts, Your Honor, were this. There's no dispute that Nick Sivieri controlled the plaintiff's work. He repeatedly said at the time, on the record, that he was their boss. He oversaw their employees. There's no dispute that he told them where to go each day. He told them what work to do. He set their wages. He signed their paychecks. So he certainly was in control of the situation. Now, the trial court, Judge Panos made some findings, however. Does there have to be evidence that those things you just said connect to some understanding that that entitled them to overtime? Yes. The fact that he was in control. And I'll add, too, there's also no dispute that he testified in the stand. He was aware that employees get overtime after 40 hours. He acknowledged that when he himself was a construction laborer, that he had received overtime. That he had been a union organizer. He knew all about the law of overtime. So there's no question he was aware of that. And Judge Panos' findings, the one that perhaps was at the crux of it, was he found the defendant what he called a calculated risk, which was, I'll hire these guys. They won't expect overtime. They won't ask for it. And I won't pay it to them. In return, I'll take a risk that somebody might challenge that. Now, the first problem with that is this. I'm still stuck on the original question, which is, what is your best factual evidence in this record that Silveri knew that he was violating the wage laws? Okay. Sure. The best factual evidence are that he knew that they were working more than 40 hours a week. He knew that people who work more than 40 hours a week get overtime. He knew that he was in control of their work situation. And so under those facts, he couldn't possibly have had a reasonable belief that they weren't his employees and they weren't entitled to overtime. He said repeatedly they were his employees. So those are the facts that he should have known, absolutely. But if I can return for a second to the trial court's finding that he took a calculated risk, first of all, that runs up against another finding Judge Panos made, which is that he believed he had the right to treat these people as contractors who weren't subject to overtime. Well, if he actually believed that, if he really sincerely thought he had the right to do it, then he wasn't taking a risk by not paying them overtime. On the other hand, if the risk he accepted was that they might sue him for it, then we're agreeing that he knew what the law was. He knew they could claim that they were his employees. He knew they could claim that they were entitled to overtime. There are many different definitions in the law that distinguish employees from independent contractors, correct? There's a 13-part test in the federal law. There's the Massachusetts standard here. There's a workers' comp standard, right? You agree there are different standards in the law, right? I agree that the federal standard has one and that workers' comp and wage claims each have a standard. The one that we're talking about here that matters for this case is Chapter 149, 148B. I understand that, but my question is, you told me a bunch of facts, but a person could for some purposes be an employee and for other purposes be an independent contractor because the law has different tests for different benefits. So do we need some evidence that he understands how those facts interact with the Massachusetts wage definition of independent contract of employee, which is what entitles them to overtime? Well, the fact is he did know about wage laws. He testified to knowing about them. And he never gave any testimony to suggest what Judge Panos in the bankruptcy appellate panel found, which is that he somehow drew some nuanced distinguish in his own mind as to, well, I'll say for workers' comp purposes they were my employees, but I'll say for wage purposes they were independent contractors. Nick Sivieri certainly never claimed to have done that. What he said at trial was that, well, I said they were my employees just because some unidentified lawyer told me to say that. And Judge Panos saw right through what a lie that was. You certainly can't go from there to infer that, well, he knew he was just saying one thing for the purposes of a workers' comp proceeding, something else for the purposes of a wage law. My time is running short. I want to very quickly talk about the case of In Re Shove, which I think you all saw in my brief. I think there's a lot to say here. Because that was a case where an employer sent someone to go shovel snow off a roof, great idea, and the fact that the employer was in control of that situation, that the employee was afraid to say no to him, had everything to do with the court's, I thought, very good analysis, that you start off with what that employer subjectively knew. In that case, because he subjectively did not know the specific house where the employee ended up going to, he wasn't liable. But you start with his subjective knowledge, and from there, once you've established that, you ask, okay, then in that case, given what he knew, objectively, what should have been substantially certain to him? That is what applies here, especially because there's no doubt, it's fundamental public policy, non-prompt payment of wages is fundamental public policy. So it's especially important here to say, given that Nick Sevieri knew all the facts showing that these guys were his workers for his employees for wage purposes, he knew they get overtime after 40 hours, what should have been objectively substantially certain to him? Thank you very much. Thank you. At this time, if counsel for Apelli would please introduce himself on the record to begin. Good afternoon. May it please the Court, my name is Lane Goldberg on behalf of the Apelli, Nicholas Sevieri. I'll also reference him as the debtor because he was the debtor in the bankruptcy. I want to address just a couple of things that were just said. So the question posed was the factual evidence that he knew that he violated the wage laws. The burden was on the plaintiffs to establish that. There's no factual evidence. In fact, the bankruptcy court found, made a specific finding that he believed that he could classify these workers as subcontractors. That classification legally exists, and the bankruptcy appellate panel did an excellent job of going through the Wage Act and demonstrating how someone can come at this issue of a classification. So it's really just a misclassification with no intent behind it. I want to focus in on the standard before the Court, this 523A6 section, that it does require three elements, basically. It does require that the creditor suffered an injury, the intent element, and then the malicious element here. At the outset, I do want to mention very briefly one particular requirement, and it's in my brief on the standard of review, that the case for deferring to the bankruptcy court's fact-finding is particularly strong when intent is at issue. And here, this entire case really rests on intent. So the first element, and because time is brief here, I'll mainly rest on my brief for that element, but I just want to mention one point here. In the first element, it requires that the creditor needs to suffer an injury. A person can't deprive someone of something that they have not agreed to receive. So what is the injury here if the plaintiffs have not agreed to receive that overtime? And there is a finding here from the bankruptcy court, from Judge Panos, that states that plaintiffs have had no expectation of being compensated for overtime. There was nothing in the record that established that they did. That's a peculiar idea. They went and sued to get it. So your point is that they didn't, at the time, complain, and so somehow, even though they sued, one, the guy's been told he's wrong, that somehow excludes them because there was no contractual agreement? They sued after the workers' comp injury, and at the time that they were working, the agreement between Mr. Sivieri and the plaintiffs was that it was by job, that they would estimate their hours, Mr. Sivieri would pay this lump sum, and they were subcontractors. So that was the agreement that Judge Panos kind of found there in saying that they didn't have any expectation of being compensated for overtime So maybe they don't have a contractual injury, an injury for breach of contract, but they had an injury based on a breach of statutory obligation. Yes, so after the fact they had that, and that's no question. There's a judgment in the record that there is an injury there with the judgment. But at the time that they were working, because this case goes to the intent at the time that they were working of Mr. Sivieri, and it goes to the injury, so here you have to have the intent to actually have that injury. It's not the intent for the action that causes the injury, and the case law supports that. I want to move on to intent here, because there's two ways of getting to this, what I would call straightforward intent, the subjective intent, and then the substantial certainty. First with the straightforward intent, he would have had, just as I said, he would have had to intend a misclassification under the Wage Act so that the plaintiffs were not paid overtime. He would have had to intend that nonpayment of overtime. The element of intent requires this consideration of his subjective intent, and I do, you know, the case law does support that, even if his beliefs were wholly unreasonable, and I'm not asserting that they were unreasonable, because the misclassification is, or the classification is something that a person that has workers can actually classify as an employee, classify someone as an employee or a subcontractor. The bankruptcy court finding that Mr. Sivieri believed at the time that he had the right to classify workers as subcontractors, that it was his general practice, and that he perceived it to be common practice in the construction industry, is backed up by the record, the testimony, the documents that were submitted. The trial judge, Judge Panos, also credited his testimony that Plaintiff Samois in particular had authority over and assembled this crew to perform work on job sites. So first, the debtor testified that he managed hundreds of workers on various jobs, and he didn't think one of them was an employee. He never paid them as an employee. The debtor never thought, Mr. Sivieri never thought in his mind that the plaintiffs were employees, because he was in this line for 25 years, and he never had any agreement with any worker that they were an employee. So why would this be different? If I could interrupt you. There's this sort of question of whether MFN and NAS were able to submit more competitive bids because of the way he classified the employees here. Can we draw an inference then that they lowered their costs by not paying overtime? Well, the inference can also be drawn as if they were employees and they were subjected to overtime that he would find somebody else or, you know, find it. I mean, there's all different kinds of situations here. I don't think that that was in the record, and I would say that the trial judge didn't draw that inference. And so this court should give deference to the trial judge not drawing that inference, that that did in fact happen. So what your friend says is he did everything that you would expect an employer to do over an employee, and the only piece I see missing is whether he knows how those map on to Massachusetts law of independent contractor versus employee. So at what point do we reach where, well, this guy is just intentionally avoiding knowing what Massachusetts law is because he's acting in a way that under any objective indicia says employee, and he says, I don't want to know. What happens in the, I'm not saying we have that situation, but if we did, is that person acting willfully? I think if I understand your question correctly, and I do want to say that there's references in the record where he called them employees. He said that they're my guys. He said that they're subcontractors, independent contractors. He called them everything. So as far as his actions, his actions were that he paid them for everything that they turned in, no questions asked, never paid them late. It begs the question of why would this person pay someone for if they turned in hours that were, it was a 20-hour week or a 70-hour week. He never questioned it. There was a lot of testimony about how he mishandled paperwork with his business. Okay. So that argument is he's sloppy. I get that. Yeah. But what about the argument? I just want to understand the limits of this. Is there some point where it all lines up as employee and the only thing missing is I, the employer, didn't go out and find out what Massachusetts law is? I didn't ask. I just didn't want to know. What is that situation? That wasn't in the record. He did testify that he knew Massachusetts law. He knew the difference. But in his, you know, 25 years, he never had an employee. And so that's why he classified them and made that choice to classify them as a subcontractor as opposed to an employee because he just, in his business, he never did this. He, I just want to, you know, again, if they had, you know, worked, if they were, let's say that they were entitled to overtime and they were paid overtime, you know, he wasn't keeping track of what he was paying them. He was paying by job. He was paying by their estimated hours. So he was just paying out, you know, on the paychecks. And there is one paycheck that says subcontractor on there. There's a paycheck stub in the record. But there was direct evidence on this point that they could turn in whatever hours and he would just pay it. So why would he scheme to defraud them if he's going to pay whatever hours that they say? So they said 100 hours, but they worked 40, he just paid whatever? That's a record 719, the testimony from both sides, too. You know, Plaintiff Samois, I believe, also testified that if he had turned in 20 hours or 70 hours or, you know, whatever the numbers were, Mr. Sivieri would pay him. And that was the testimony from both sides there. That wasn't at issue at all. You can't say that there's an injury or that there's this, I apologize. Just finish your thought. Yes, that there's this injury that when he's paying, this intent to injure when he's paying whatever amount these people are asking or putting in the record. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.